United States District Court
Southern District of Texas
**ENTERED**
March 03, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| AMY E. ODEM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:22-CV-00242 |
| | § | |
| ARMANDO CHAPA, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO RETAIN CASE AND DISMISS CERTAIN CLAIMS

Plaintiff Amy E. Odem, appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act.  *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915A.

Plaintiff has stated for purposes of screening Eighth Amendment deliberate indifference claims against **RN Heather and Sandra** in their individual capacities arising from incidents occurring on: (1) March 19 through March 21, 2022; (2) June 12, 2022; (3) June 16, 2022; (4) June 19, 2022; (5) June 24, 2022; (6) March 11 through July 7, 2022 (denial of colostomy bags); (7) July 21, 2022; (8) July 23, 2022; and (9) late October 2022. Accordingly, it is respectfully recommended that these claims be **RETAINED**.  The undersigned will order service on these defendants.

1 / 21

For the reasons set forth below, the undersigned respectfully recommends further that: (1)  Plaintiff's claims against **Defendants** in their official capacities be **DISMISSED with prejudice**; and (2) Plaintiff's remaining claims against **Defendants** be **DISMISSED with prejudice** for failure to state a claim pursuant to §§ 1915(e)(2)(B) and 1915A(b)(1).

## I.      JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.     PROCEDURAL BACKGROUND

Plaintiff is confined as a pretrial detainee at the Aransas County Detention Center (ACDC) in Rockport, Texas.  Plaintiff's allegations in this case arise in connection with her current confinement.

In this action, Plaintiff sues the following defendants: (1) Armando Chapa, the ACDC's Jail Director; (2) RN Heather, a member of the ACDC's medical team; and (3) Sandra, who had been working as a medical assistant on the medical team.  (D.E. 1, pp. 1, 3). Plaintiff generally alleges that Defendants failed to provide her with certain medical supplies and ignored various emergency medical situations involving Plaintiff's health. (*Id.* at 4).  Plaintiff seeks injunctive and monetary needs.  (*Id.*).

The undersigned conducted a *Spears*[1] hearing where Plaintiff was given an opportunity to explain her claims.  The following representations were made either in

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

Plaintiff's original complaint (D.E. 1) or at the *Spears* hearing.  At the time of the *Spears* hearing, Plaintiff was 46 years old.  She is 5'3" tall and weighs 155 pounds.  (D.E. 12, p. 4).   Plaintiff has Asperger's Syndrome, which means that she is nervous talking and communicating.  (*Id.* at 3).  Plaintiff explained that Asperger's Syndrome is "like high-functioning autism" and that individuals with Asperger's Syndrome often suffer gastrointestinal distress as well as difficulties regulating blood control and temperature. (D.E. 12, p. 29).  Plaintiff was first diagnosed with Asperger's Syndrome in 2013.  (*Id.* at 30).

Plaintiff is confined at the ACDC as a pretrial detainee on three counts of second degree family violence.  (*Id.* at 4-5).  She was taken into custody in January 2022 and has remained in continuous custody at the ACDC.  (*Id.* at 5).  Plaintiff was unable to identify the last name of either RN Heather or Sandra.  (*Id.* at 6-7).  Plaintiff describes RN Heather as being 5'8", having light curly-brown hair, in her late 40's, and a non-Hispanic Caucasian.  (*Id.* at 6).  Plaintiff describes Sandra as being 5'5", having long black hair, expecting a baby, in her late 20's, and Hispanic.  (*Id.* at 7).  At the time of the events described in Plaintiff's complaint occurred, Sandra worked as a medical assistant.  (*Id.*). Sandra has since been reassigned to work as a guard at the ACDC.  (*Id.*).

Plaintiff has provided a chronological series of events in which she details incidents regarding the care provided to her by the ACDC Medical Team between March 2022 and September 2022.  (D.E. 1-1, pp. 2-6).  These incidents are summarized as follows:

- March 11, 2022 – Plaintiff visited Dr. Bingham, complaining about her blood boiling and skin burning.  (D.E. 1-1, p. 2; D.E. 12, pp. 8-9).  Neither RN Heather nor Sandra provided Plaintiff with any medical attention this day other than providing her with the antibiotic "cipro" and other medications.  (D.E. 12, p. 10).

-  On March 19, 2022 – Plaintiff was moved to a general population cell with two severely disabled inmates having schizophrenia.  (D.E. 1-1, p. 2; D.E. 12, p.11).  Plaintiff believed that she would instead be moved to a segregated cell on the advice of her doctor to protect her immune system.  (D.E. 12, p. 11).  Plaintiff did not identify any defendant as ordering Plaintiff's move to the general population cell.  (D.E. 12, p. 12).

- From March 19 through March 21, 2022 – Plaintiff felt very sick with burning, redness, and pain in her left shoulder and foot.  (D.E. 1-1, p. 3) Plaintiff further asked for heart rate beat tests, which revealed tachycardia.  (*Id.*).  Melissa, the former nurse, noted that Plaintiff's heart rate was high.  (D.E. 12, p. 13).  RN Heather, however, acted dismissively and would not listen to Plaintiff's issues.  (*Id.* at 14).  Due to RN Heather's lack of attention, Plaintiff continued to suffer longstanding tachycardia.  (*Id.*).

- June 12, 2022 – Plaintiff complained to RN Heather about "bleeding from inside stoma."  (D.E. 1-1, p. 3).  Plaintiff explained that a "stoma" is a hole in her abdominal wall where the intestines are linked.  (D.E. 12, pp. 15-16).  Plaintiff underwent diverticulitis surgery in 2019 which resulted in complications leading to Plaintiff needing a colostomy bag.  (*Id.* at 16).  RN Heather told Plaintiff that it was only surface bleeding and recommended Plaintiff to use wipes.  (*Id.*).  RN Heather did not examine Plaintiff to ascertain whether internal bleeding was present.  (*Id.* at 17).  Plaintiff explained that she also suffers from severe anemia, meaning that any bleeding issue could be problematic.  (*Id.* at 17-18).

- June 16, 2022 –  Plaintiff asked for a bag/ring from RN Heather, who responded that she would not stop what she was doing to get a bag for Plaintiff.  (D.E. 1-1, p. 4).  Plaintiff explained that: (1) the ring sticks to her abdomen; (2) the bag, which has to be cut in a small circle, sits on top of the ring; (3) these devices were necessary to address the complications suffered after her diverticulitis surgery; (3) on many occasions, either RN Heather, Sandra, or Melissa assisted plaintiff in

preparing the bag to a particular size and fitting the bag/ring properly. (D.E. 12, pp. 18-21).  The bag/ring is changed on Plaintiff three times a week.  (*Id.* at 21).  Because RN Heather failed to get the bag on the night of June 16, 2022, a security guard was forced to obtain the bag. (*Id.* at 21).  Because the guard did not cut it in a proper fashion, it did not fit on Plaintiff.  (*Id.* at 22).  As such, Plaintiff's stool was not able to exit her body efficiently and ended up impacted inside her.  (*Id.*). Plaintiff suffered severe pain, an acidic skin burn, and bleeding.  (D.E. 1-1, p. 4; D.E. 12, p. 22).

- June 19, 2022 – Plaintiff complained about: (1) her neck becoming infected with boils at the hairline; (2) her high heart rate and blood pressure; and (3) a blood clot discharge from the inside stoma.  (D.E. 1-1, p. 3; D.E. 12, p. 23).  Plaintiff explained to RN Heather that she needed emergency care.  (D.E. 1-1, p. 3; D.E. 12, p. 24).  RN Heather did not think an emergency room visit was necessary, indicating that the boils were likely eczema or psoriasis.  (D.E. 1-1, p. 3; D.E. 12, p. 23).  RN Heather provided no treatment that day for Plaintiff's complaints.  (D.E. 12, p. 24).  RN Heather's denial of treatment effectively ignored her neck infection, which remained painful as of the date of the *Spears* hearing.  (D.E. 12, p. 25).

- June 24, 2022 – Sandra informed Plaintiff that she had boils on her neck and head and that Sandra would return with a test kit to determine the type of infection so that a proper antibiotic could be administered.  (D.E. 1-1, p. 5).  Sandra never returned to perform the test.  (*Id.*).  Sandra often offered to help with Plaintiff's infections, boils, and other medical issues, but would not follow through on her offers.  (D.E. 12, p. 26).  On a scale of 1 to 10, with 10 being the most severe pain, Plaintiff described her pain level from the boils at a 7. (*Id.*).  As of the date of the *Spears* hearing, Plaintiff has boils in the back of her neck.  (*Id.* at 27).

- March 11 through July 7, 2022 – Plaintiff filed a grievance complaining about RN Heather and Sandra keeping medical supplies from Plaintiff.  (D.E. 1-1, p. 4).  Plaintiff's grievance pertained to her request for colostomy bags supplied by RN Heather and Sandra. (D.E. 12, p. 28).  Plaintiff needed these supplies on a continuous basis to address serious medical issues involving "impaction or pancaking"

as well as skin burning issues which would induce internal or external bleeding.  (*Id.* at 28).

- July 21, 2022 – Plaintiff met with MHMR services regarding her need for help and/or therapy services for her Asperger's Syndrome.  (D.E. 1-1, p. 4).  Plaintiff further complained about inflammation, brain fog, anxiety, restlessness, and Obsessive-Compulsive Disorder (OCD) at that time.  (*Id.*).  Plaintiff directed her requests for therapy to RN Heather and Sandra who often procrastinated with processing these requests.  (D.E. 12, p. 32).  Because she did get her requested therapy, Plaintiff's anxiety levels and blood pressure, which are related to her Asperger's Syndrome, have soared.  (*Id.*).

- July 21, 2022 – Plaintiff complained of tooth pain and Sjogren's Syndrome, which caused dryness in her eyes and mouth.  (D.E. 1-1, p. 5).  Plaintiff described her tooth pain level as 8 on a scale of 1 to 10.  (D.E. 12, p. 33).  Plaintiff was diagnosed with Sjogren's Syndrome in 2018.  (*Id.* at 34).  She explained that Sjogren's Syndrome is an autoimmune disorder that affects your eyes and mouth, accelerating tooth decay.  (*Id.* at 33).  Plaintiff was given a bottle of mouth rinse for her complaint but no refills.  (D.E. 1-1, p. 5).  Plaintiff primarily sought treatment for these conditions from Melissa.  (D.E. 12, p. 34).  However, Plaintiff frequently asked RN Heather and Sandra for mouth wash refills, who would each respond by directing Plaintiff to complete a request form.  (*Id.* at 34-35).  Plaintiff did not receive responses to her requests.  (*Id.* at 35).  Plaintiff continues to suffer advanced tooth decay.  (*Id.*).

- July 23, 2022 – Plaintiff complained of headache, throbbing feet, chest pains.  (D.E. 1-1, p. 5).  For her high blood pressure, Plaintiff has been prescribed a combination pill consisting of Lisinopril and HCTZ.  (D.E. 12, p. 36). That evening, RN Heather informed Plaintiff that she would receive her Lisinopril and HCTZ pills separately because the jail was out of the combination pill.  (*Id.* at 37).  Plaintiff did not receive any blood pressure medication that morning, despite the fact that individual Lisinopril and HCTZ pills were available. (*Id.*).  Plaintiff explained that her doctor, Dr. Bingham, was afraid of Plaintiff getting an aneurysm due to her high blood pressure.  (*Id.* at 38).  Thus, skipping even one medication would place her at a higher risk for an aneurysm.  (*Id.*).

- August 13, 2022 – Plaintiff had 27 CC's of blood and clots in her colostomy bag from internal bleeding. (D.E. 1-1, p. 5). Plaintiff speculated that the internal bleeding may have been caused by all of the stress on her intestines from previous incidents. (D.E. 12, pp. 39-40). After one hour, Plaintiff was cleared to be transported by ambulance to the hospital emergency room. (D.E. 1-1, p. 5). Plaintiff lost another 125 CC's of blood in transit. (*Id.*). Plaintiff received a medication at the emergency room called Protonix. (D.E. 12, p. 40). Plaintiff also received a CT scan before being transported to Doctors Regional Hospital. (*Id.* at 40-41). At the hospital, Plaintiff underwent an endoscopy and a CAT scan. (*Id.* at 42). Plaintiff was not diagnosed with any condition during her stay at the hospital. (*Id.*). Plaintiff could not identify who denied him a colonoscopy at the hospital. (*Id.*). She speculated that it could have been Melissa's decision. (*Id.* at 43). Neither RN Heather nor Sandra treated Plaintiff that day. (*Id.* at 40).

- August 14 through August 17, 2022 – During her second day in the hospital, Plaintiff began to vomit and her head started to visibly swell and turn white or grey. (D.E. 1-1, p. 6). According to Plaintiff, her physician, Dr. Bingham, was concerned that Plaintiff would suffer an aneurism while confined at the ACDC due to her high blood pressure. (*Id.*). Plaintiff clarified that Dr. Bingham was the ACDC's head doctor. (D.E. 12, p. 45). Plaintiff was discharged on August 17, 2022. (D.E. 1-1, p. 6). Plaintiff felt sick at the time of discharge but was told informed the hospital's medical personnel could find no more bleeding. (D.E. 12, p. 46).

- September 5, 2022 – Plaintiff discharged four hard and sharp stones into her colostomy bag. (D.E. 1-1, p. 6). Melissa from medical believed that the stones were calcium stones. (*Id.*). Plaintiff suffered from nausea, abdominal pain, and painful head swelling due to intercranial pressure. (*Id.*). Plaintiff did not receive any medical attention from either RN Heather or Sandra. (D.E. 12, p. 47).

- September 8, 2022 – Plaintiff underwent an Ultrasound/Sonogram. (D.E. 1-1, p. 6). This test showed that Plaintiff has a "mass" and that her left kidney is one centimeter larger than her right one. (*Id.*). Plaintiff has not received a diagnosis based on the findings in the Ultrasound/Sonogram. (D.E. 12, p. 48).

In connection with the incidents described above, Plaintiff holds Jail Director Chapa responsible "by proxy in his position." (D.E. 12, p. 48). Plaintiff complains that Chapa failed to oversee his staff in connection with the passing out of supplies. (*Id.* at 49). Plaintiff sues Chapa in his official capacity only. (*Id.* at 50). Plaintiff sues RN Heather in both her individual and official capacity. (*Id.* at 50). After indicating a reluctance to sue Sandra, Plaintiff testified that she sues Sandra only in her official capacity only. (*Id.* at 51). Plaintiff clarified at the *Spears* hearing that she seeks monetary and injunctive relief. (*Id.* at 51-52).

Plaintiff indicated near the end of the *Spears* hearing that she would like to present additional allegations involving RN Heather. (*Id.* at 53). The undersigned granted Plaintiff twenty days from November 15, 2022 to file an amended or supplemental complaint. (*Id.* at 55). On November 22, 2022, Plaintiff filed a letter which the undersigned has construed in a separate Order to be her supplemental complaint. (D.E. 9).

Plaintiff presents her allegations in the supplemental complaint in three columns horizontally on the page, making it difficult if not impossible to follow Plaintiff's train of thought.[2] As best as the undersigned can glean, Plaintiff alleges that, in late October 2022, RN Heather delayed or impeded Plaintiff's ability to receive medical devices (bags and rings) to help alleviate her complications resulting from the diverticulitis surgery. (D.E. 9,

---

[2] In her supplemental complaint, Plaintiff often refers to an individual named "H." The undersigned will assume that "H" refers to RN Heather. Plaintiff further provides an incoherent set of allegations regarding the medial care provided to Plaintiff in November 2022 to address her high blood pressure readings. (D.E. 9, pp. 5-7). It is unclear whether Plaintiff is attacking the care provided by RN Heather or other individuals not named in this complaint. The undersigned, therefore, cannot properly evaluate whether these incoherent allegations state a claim against RN Heather.

pp. 1-2).  Plaintiff alleges that she was injured by RN Heather's actions through: (1) an increase in her anxiety and blood pressure levels; (2) blood in her stool; and (3) further damage to her intestines through impaction and passing of sharp objects.  (*Id.* at 3).

## III.    LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999).  "The issue is not whether the plaintiff will ultimately prevail, but

whether he is entitled to offer evidence to support his claim.  Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable.  *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation.  *Twombly*, 550 U.S. at 555.  As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed.  *Id.*

## IV.   DISCUSSION

### A. Official Capacity Claims

Suits against individuals in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (internal quotations and citation omitted). Thus, to the extent Plaintiff seeks to sue Chapa, RN Heather, and Sandra in their official capacities, it is effectively a suit against the officials' office, Aransas County.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

A municipality such as Aransas County is liable for the constitutional violations of its employees only if the alleged constitutional deprivations resulted from municipal

policy. *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978). *See also Zarnow v. City of Wichita Falls, Texas*, 614 F.3d 161, 166 (5th Cir. 2010) (noting that a municipality may not be subject to liability merely for employing a tortfeasor; liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation). Liability of a municipality under § 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Monell*, 436 U.S. at 694; *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Here, Plaintiff fails to allege that any of the named defendants are policymakers in Aransas County or that an official county policy or practice was the "moving force" behind the violations of Plaintiff's constitutional rights. Accordingly, the undersigned respectfully recommends that Plaintiff's claims against Chapa, RN Heather, and Sandra in their official capacities be dismissed with prejudice.

## B. Deliberate Indifference

Plaintiff claims that Chapa, RN Heather, and Sandra acted with deliberate indifference to her medical needs by ignoring her complaints and failing to provide her with important medical supplies. Plaintiff testified at the *Spears* hearing that she only sues RN Heather in her individual capacity. (D.E. 12, pp. 50-51). It is apparent that Plaintiff, as a *pro se* litigant, did not fully understand the legal significance between suing officials in their individual capacities as compared to suing them in their official capacities. In construing Plaintiff's complaint as supplemented and *Spears* hearing testimony liberally,

as this Court is required to do, the undersigned will recognize Plaintiff's claims as also suing Chapa and Sandra in their individual capacities.

Plaintiff has been a pretrial detainee at all relevant times while in custody at the ACDC since January 2022.  (D.E. 12, p. 5).  Pretrial detainees have a constitutional right under the Due Process Clause to protection from harm during their confinement. *See Brumfield v. Hollins*, 551 F.3d 322, 327 (5th Cir. 2008) (citing *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc)). The duty to protect pretrial detainees from harm under the Due Process Clause is the same as the one afforded to convicted prisoners under the Eighth Amendment. *See Hare*, 74 F.3d at 650 ("[T]he State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including protection from harm, during their confinement.").  Thus, Plaintiff's deliberate indifference claims will be analyzed under the same principles.  *See Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001) (recognizing that there is "no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care").

An Eighth Amendment violation occurs when a prison official is deliberately indifferent to an inmate's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) *Farmer*, 511 U.S. at 834.  In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege that prison officials acted with deliberate indifference to serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 105 (1976); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

The test for deliberate indifference has both an objective and subjective prong. *Farmer*, 511 U.S. at 839.  Under the objective prong, the inmate "must first prove objective exposure to a substantial risk of serious harm."  *Trevino v. Livingston*, No. 3:14-CV-52, 2017 WL 1013089, at *3 (S.D. Tex. Mar. 13, 2017) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)).  To prove the subjective prong of the deliberate indifference test, the inmate "must establish that the defendants were aware of an excessive [or substantial] risk to the plaintiff's health or safety, and yet consciously disregarded the risk." *Cook v. Crow*, No. 1:20-CV-85, 2021 WL 6206795, at *3 (E.D. Tex. July 26, 2021), *rec. adopted* 2022 WL 23169 (E.D. Tex. Jan. 3, 2022) (citing *Farmer*, 511 U.S. at 397 and *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002)).

Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment.  *Estelle*, 429 U.S at 104-05.  In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted).  A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference [that] *results in substantial harm.*"  *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (emphasis in original).

"Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001). The Fifth Circuit has "consistently recognized … that 'deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm.'" *Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020) (quoting *Thompson*, 245 F.3d at 458-59). *See also Aguirre v. City of San Antonio*, 995 F.3d 395, 420 (5th Cir. 2021) ("Negligence or even gross negligence is not enough, the officials must have actual knowledge of the substantial risk"). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (citations omitted).

### *(1) Jail Director Chapa*

Plaintiff seeks to holds Jail Director Chapa responsible "by proxy in his position." (D.E. 12, p. 48). Plaintiff complains that Chapa failed to oversee his staff in connection with the passing out of certain medical supplies. (*Id.* at 49).

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987). *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials). A supervisory official may be held liable only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies

that causally result in the constitutional injury." *Porter v. Epps,* 659 F.3d 440, 446 (5th Cir. 2011).

Plaintiff seeks to hold Chapa accountable in his supervisory capacity as responsible for the actions of his employees. Plaintiff alleges no specific facts to suggest that Chapa had any personal involvement in the various incidents where Plaintiff was allegedly denied medical supplies or that he otherwise implemented any unconstitutional policies. Plaintiff, therefore, has failed to allege a plausible claim against Chapa in his role as a supervisory official. Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claims against Chapa in his supervisory capacity be dismissed with prejudice as frivolous and/or for failure to state a claim for relief.

### *(2) RN Heather and Sandra*

### **Lack of Personal Involvement**

Plaintiff has identified several incidents of inadequate medical care in which neither RN Heather nor Sandra had any personal involvement. These incidents are summarized as follows:

- On March 11, 2022, Plaintiff visited Dr. Bingham, seeking treatment for issues involving her blood boiling and skin burning. (D.E. 1-1, p. 2; D.E. 12, pp. 8-9). Neither RN Heather nor Sandra provided Plaintiff with any medical attention this day other than providing her with the antibiotic "cipro" and other medications. (D.E. 12, p. 10).

- On March 19, 2022, Plaintiff was moved to a general population cell with two severely disabled inmates having schizophrenia. (D.E. 1-1, p. 2; D.E. 12, p.11). Plaintiff did not identify either RN Heather or

Sandra as ordering Plaintiff's move to the general population cell. (D.E. 12, p. 12).

- On August 13, 2022, Plaintiff was taken to the emergency room and then to Doctors Regional Hospital in connection with complications from internal bleeding.  (D.E. 1-1, p. 5; D.E. 12, pp. 39-42).  Neither RN Heather nor Sandra treated Plaintiff on the day she was transported to the hospital.  (*Id.* at 40).

- Plaintiff was treated at the hospital from August 14, 2022 through August 17, 2022, during which she had issues associated with vomiting and a swollen head.  (D.E. 1-1, p. 6; D.E. 12, p. 45).  Plaintiff was discharged on August 17, 2022.  (D.E. 1-1, p. 6).  Plaintiff felt sick at the time of discharge but was told informed the hospital's medical personnel could find no more bleeding.  (D.E. 12, p. 46).

- On September 5, 2022, Plaintiff discharged four hard and sharp stones into her colostomy bag.  (D.E. 1-1, p. 6).  Melissa from medical believed that the stones were calcium stones.  Plaintiff did not receive any medical attention from either RN Heather or Sandra.  (D.E. 12, p. 47).

- On September 8, 2022, Plaintiff underwent an Ultrasound/Sonogram.  (D.E. 1-1, p. 6).  This test showed that Plaintiff has a "mass" and that her left kidney is one centimeter larger than her right one.  (*Id.*).  Plaintiff has not received a diagnosis based on the findings in the Ultrasound/Sonogram.  (D.E. 12, p. 48).

With respect to each of these incidents involving medical care issues, Plaintiff's allegations reflect that she received treatment and attention from other medical personnel at either the ACDC or hospital.  Plaintiff further offers no allegations to indicate that either RN Heather or Sandra ordered Plaintiff to be moved to a general population cell with two severely disabled elderly inmates.  Accordingly, the undersigned respectfully recommends that Plaintiff's deliberate indifference claims pertaining to events occurring on March 11, 2022, March 19, 2022, August 13 through August 17, 2022, September 5, 2022, and

September 9, 2022 be dismissed with prejudice as frivolous and/or for failure to state a claim for relief. *See Manzo v. Mateware*, No. 3:19-CV-812-S-BK, 2021 WL 6284098, at *8 (N.D. Tex. Dec. 13, 2021), *rec. adopted* 2022 WL 48395 (N.D. Tex. Jan. 5, 2022) (finding no plausible claim against prison nurse as inmate offered no allegations she was personally involved in the events underlying the deliberate indifference claims).

### Deliberate Indifference Claims against RN Heather and Sandra

Plaintiff alleges that RN Heather and Sandra ignored her complaints seeking medical care or otherwise provided inadequate medical attention in the following instances:

- From March 19 through March 21, 2022, Plaintiff dismissed Plaintiff's complaints of burning, redness, pain in her left shoulder and foot, and tachycardia. (D.E. 1-1, p. 3; D.E. 12, p. 13-14). As a result of RN Heather's lack of attention, Plaintiff continued to suffer longstanding tachycardia. (*Id.*).

- On June 12, 2022, Plaintiff dismissed Plaintiff's complaints about "bleeding from inside stoma," which pertains to a hole in the abdominal wall where her intestines are linked. (D.E. 1-1, p. 3; (D.E. 12, pp. 15-16). RN Heather told Plaintiff that it was only surface bleeding and recommended Plaintiff to use wipes. (*Id.*).

- On June 16, 2022, RN Heather failed to provide Plaintiff with a properly cut bag and ring which was necessary to address certain complications resulting from her diverticulitis surgery. (D.E. 1-1, p. 4; D.E. 12, pp. 18-21). As a result, Plaintiff's stool was not able to exit her body efficiently and ended up impacted inside her. (*Id.*). Plaintiff suffered severe pain, an acidic skin burn, and bleeding. (D.E. 1-1, p. 4; D.E. 12, p. 22). In late October 2022, RN Heather again delayed or impeded Plaintiff's ability to receive the bag/ring device to help alleviate her complications resulting from the diverticulitis surgery. (D.E. 9, pp. 1-2). RN Heather's actions led to Plaintiff suffering: (1) an increase in her anxiety and blood pressure levels; (2)

blood in her stool; and (3) further damage to her intestines through impaction and passing of sharp objects.  (*Id.* at 3).

- On June 19, 2022, RN Heather denied Plaintiff emergency care for her complaints about: (1) her neck becoming infected with boils at the hairline; (2) her high heart rate and blood pressure; and (3) a blood clot discharge from the inside stoma.  (D.E. 1-1, p. 3; D.E. 12, pp. 23-24).   While indicating that Plaintiff's boils were likely eczema or psoriasis, RN Heather provided Plaintiff with no medical care to treat her boils.  (D.E. 1-1, p. 3; D.E. 12, pp. 23-24).  RN Heather's actions exacerbated Plaintiff's neck infection, which remained painful as of the date of the *Spears* hearing.  (D.E. 12, p. 25).

- On June 24, 2022, Sandra failed to provide Plaintiff, as she had promised, with a medical test to determine the type of infection in Plaintiff's neck in order to determine what antibiotic should be administered.  (D.E. 1-1, p. 5).  Sandra's inaction led to Plaintiff continuing to suffer from her painful neck infection associated with the boils.  (D.E. 12, p. 26).

- From March 11 through July 7, 2022, RN Heather and Sandra kept important medical supplies from Plaintiff, namely colostomy bags.  (D.E. 1-1, p. 4; D.E. 12, p. 28).  Plaintiff needed these supplies on a continuous basis to address serious medical issues involving "impaction or pancaking" as well as skin burning issues which would induce internal or external bleeding.  (D.E. 12, p. at 28).

- On July 21, 2022, RN Heather and Sandra failed to respond to or adequately process Plaintiff's request for therapy and other help to address her Asperger's Syndrome, inflammation, brain fog, anxiety, and OCD issues.  (D.E. 1-1, p. 4; D.E. 12, p. 32).  Because she did get her requested therapy, Plaintiff's anxiety levels and blood pressure soared.  (D.E. 12, p. 32).

- Also on July 21, 2022, RN Heather and Sandra failed to respond or adequately address her requests to refill her mouth wash, which was needed to address health concerns associated with severe tooth pain and Sjogren's Syndrome.  (D.E. 1-1, p. 5; D.E. 12, pp. 33-34). Plaintiff continues to suffer advanced tooth decay.  (*Id.* at 34-35).

- On July 23, 2022, RN Heather failed to provide Plaintiff with any blood pressure medication in the morning despite the fact that her

Lisinopril and HCTZ pills were available.  (D.E. 1-1, p. 5; D.E. 12, p. 36).  Plaintiff's doctor, Dr. Bingham was concerned about Plaintiff suffering an aneurysm due to her high blood pressure and even skipping one medication would place her at a higher risk.  (D.E. 12, pp. 37-38).  Plaintiff suffered from headache, throbbing feet, and chest pains after missing her morning medication.  (D.E. 1-1, p. 5).

Throughout her complaints and *Spears* hearing testimony, Plaintiff alleges that she suffers from numerous serious medical issues and conditions associated with high blood pressure, tachycardia, complications from a diverticulitis surgery, severe anemia, an infected neck, Asperger's Syndrome, Sjogren's Syndrome, and dental issues.  Plaintiff's allegations, accepted as true, suggest that: (1) both RN Heather and Sandra were aware of Plaintiff's numerous medical issues and conditions; and (2) they nevertheless ignored or dismissed Plaintiff's various complaints of pain and requests for necessary medical devices, which exacerbated and worsened her serious medical conditions.  Given the multiple instances cited by Plaintiff, these allegations are sufficient at this early stage in the litigation to suggest a wanton disregard for Plaintiff's serious medical issues.  *See Pinchback v. Leon-Gomez*, No. 6:15-CV-805-RWS-KNM, 2017 WL 5632444, at *10 (E.D. Tex. Mar. 7, 2017), *rec. adopted* 2017 WL 5634636 (E.D. Tex. Mar. 22, 2017) ("Ignoring repeated requests for medical care can rise to the level of deliberate indifference").

Accordingly, the undersigned respectfully recommends that the Court retain Plaintiffs deliberate indifference claims against RN Heather and Sandra in their individual capacities arising from incidents occurring on: (1) March 19 through 21, 2022; (2) June 12, 2022; (3) June 16, 2022; (4) June 19, 2022; (5) June 24, 2022; (6) March 11 through July

7, 2022 (repeated denial of colostomy bags); (7) July 21, 2022; (8) July 23, 2022; and (9) late October 2022.

## V.    RECOMMENDATION

For the reasons stated above and for purposes of § 1915A and §1915(e)(2), the undersigned respectfully recommends that the Court **RETAIN**: (1) Plaintiff's Eighth Amendment deliberate indifference claims against **RN Heather and Sandra** in their individual capacities arising from incidents occurring on: (1) March 19 through 21, 2022; (2) June 12, 2022; (3) June 16, 2022; (4) June 19, 2022; (5) June 24, 2022; (6) March 11 through July 7, 2022 (repeated denial of colostomy bags); (7) July 21, 2022; (8) July 23, 2022; and (9) late October 2022.  The undersigned will order service on these defendants by separate order.

The undersigned respectfully recommends further that: (1)  Plaintiff's claims against **Defendants** in their official capacities be **DISMISSED with prejudice**; and (2) Plaintiff's remaining claims against **Defendants** be **DISMISSED with prejudice** for failure to state a claim pursuant to §§ 1915(e)(2)(B) and 1915A(b)(1).

Respectfully submitted on March 3, 2023.

_____
Julie K. Hampton
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).